**In re Thomas A. MANGANO and Eileen Mangano, Debtors.**

**Bankruptcy No. 93–30736–BKC–RAM.**

United States Bankruptcy Court, S.D. Florida.

Sept. 23, 1993.

Bennet S. Cohn, West Palm Beach, FL, for debtor.

Daniel L. Bakst, Ackerman, Bakst, Cloyd & Scherer, P.A., West Palm Beach, FL, Trustee.

### ORDER OVERRULING OBJECTION TO HOMESTEAD EXEMPTION

ROBERT A. MARK, Bankruptcy Judge.

The Trustee objects to the Debtors' claim of homestead exemption on a motor home. The Court heard the matter on July 6, 1993. Upon review of the evidence and the submitted memoranda, the Court overrules the objection and allows the claimed exemption.

### FACTS

In 1988, the Debtors, Thomas Anthony Mangano and Eileen Mangano, sold their home in New York and used the proceeds from the sale to purchase a 1988 Sports Coach motor home (the "Sports Coach"). In 1989, they drove the Sports Coach to Florida and parked it at a mobile home park. In 1990, they moved the Sports Coach to another mobile home park located at 5332 Lake Worth Road, in Lake Worth, Florida, where it has since remained. The Debtors pay rent to the park, which provides water, sanitary waste removal and electricity to the Sports Coach.

The Sports Coach is the Debtor's only residence and has been since 1990 when the Debtors moved to the mobile home park in Lake Worth. The Debtors hold a motor vehicle title to the Sports Coach but no longer have a valid registration or tag because the vehicle is no longer driven.

On March 5, 1993, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Debtors scheduled the Sports Coach exempt as their homestead pursuant to Florida Statutes 222.05. On May 31, 1993, the Trustee filed a timely objection to the exemption claim.

### DISCUSSION

The issue before the Court is whether the Debtors can claim the Sports Coach as their homestead pursuant to Article X, Section 4 of the Florida Constitution and Florida Statutes § 222.05.

Article X, Section 4 of the Florida Constitution provides in relevant part:

There shall be exempt from forced sale ..., and no judgment, decree or execution shall be a lien thereon ... the following property owned by a natural person: (1) A homestead ... of contiguous land and improvements thereon ... upon which the exemption shall be limited to the residence of the owner or his family;
...

Florida Statutes § 222.05 provides in relevant part:

Any person owning and occupying any dwelling house, including a mobile home used as a residence, or modular home, on land not his own which he may lawfully possess, by lease or otherwise, and claim-

ing such house, mobile home, or modular home as his homestead, shall be entitled to the exemption of such house, mobile home, or modular home . . .

The term "mobile home" is not defined in § 222.05, and neither party cited controlling case law on the issue of whether a recreational vehicle such as the Debtors' Sports Coach may be considered a "mobile home" for purposes of § 222.05.

The Trustee argues that the Court should look to other statutory provisions to determine the intent of the drafters, pointing in particular to Chapter 320 of the Florida Statutes, which distinguishes between a "motor home" and a "mobile home." Under Chapter 320, a "motor home" is a "motor vehicle" and is defined as:

"... a vehicular unit which does not exceed 40 feet in length and the height and the width limitations provided in § 316.-515, is a self-propelled motor vehicle, and is primarily designed to provide temporary living quarters for recreational, camping, or travel use."

F.S. § 320.01(1)(b)(4) (West 1991).

A "mobile home" is separately defined under Chapter 320 as:

... a structure, transportable in one or more sections, which is 8 body feet or more in width and which is built on an integral chassis and designed to be used as a dwelling when connected to the required utilities and includes the plumbing, heating, air conditioning, and electrical systems contained therein ...

F.S. § 320.01(2) (West 1991).

The primary distinction between a motor home and a mobile home as defined in Chapter 320 is that a motor home is designed and used as a vehicle whereas a mobile home is designed and used as a dwelling. The Trustee argues that the Sports Coach, because of its design, fits the definition of a "motor home," and thus under § 222.05, may not be claimed as homestead.

■ The Court agrees that the physical size and design of the Debtors' Sport Coach better fits within the definition of a "motor home", than "mobile home" under Chapter 320 of the Florida Statutes. The Court finds, however, in determining the exempt status of the asset, its use should be considered, not just its physical characteristics.

■ The homestead provision should be liberally construed in favor of the party claiming the exemption. *In re Imprasert,* 86 B.R. 721 (Bankr.M.D.Fla.1988). The Trustee asks the Court to strictly construe the provisions of the Florida Statutes and to consider only the design of the Sports Coach in determining its homestead status. A liberal construction mandates that the Court focus more on the use of the Sports Coach than its design or size. Here, the Debtors are using the Sports Coach as their home. They live in it and have no other residence. They pay rent to the park in which the Sports Coach sits, and that park provides it with electricity, water, and sanitary waste removal. They do not drive the Sports Coach and legally could not drive it since it has no current license plate or registration. In effect, they use it as a "mobile home," not a "motor home." Based on its intended and actual use, the Court finds that the Sports Coach is, in effect, a mobile home which may be exempted as their homestead under Florida law.

The Trustee expresses two policy concerns with this result. First, he asserts that a Chapter 7 debtor who owns a motor home or other type of recreational vehicle may attempt to claim such vehicle as exempt even though that debtor may reside in an apartment or other dwelling he or she does not own. The Court's decision here would not support the debtor's argument in that case. That hypothetical debtor would not be using the vehicle as a home, but rather for recreation or transportation. Applying the actual and intended use test formulated here, the hypothetical debtor could not claim the vehicle as exempt.

Second, the Trustee argues that this result may open the door for debtors to claim as exempt other motor vehicles including automobiles, vans, and trucks. The Court does not believe that its holding here would lead to that result where the vehicles remain titled, tagged and driven. Moreover, if an unfortunate debtor is truly living in a truck or van and has no other residence,

the Court is not troubled by articulating a test that could support that debtor's homestead claim.

Returning from the hypotheticals to the facts here, the Court finds that since the Debtors are living in and treating their Sports Coach as a mobile home, they are entitled to the exemption.

### CONCLUSION

Certain members of the public (and the media) believe that Florida's homestead exemption allows wealthy debtors to shelter a disproportionate amount of their wealth from creditors. In most instances, the perceived unfairness is a function of Florida law as written in Florida's constitution and statutes. The legislature, not the courts must enact changes if the public wants change. In this case, the Court is confronted with the opposite end of the spectrum—debtors with virtually no property other than the vehicle in which they live. Here, there is room for judicial discretion within the confines of the Bankruptcy Code, Florida Statutes and Florida Constitution. The Court exercises that discretion by interpreting the law to allow the Debtors a homestead exemption for their vehicle dwelling. The Trustee's objection is overruled.

. DONE AND ORDERED.