689 So.2d 315 (1997)
MEADOW GROVES MANAGEMENT, INC., d/b/a The Groves, Appellant,
v.
John McKNIGHT, Appellee.
No. 95-1554.
District Court of Appeal of Florida, Fifth District.
January 24, 1997.
Rehearing Denied March 12, 1997.
*316 John S. Penton, Jr., and Philip D. Storey of Stump, Storey & Callahan, P.A., Orlando, for Appellant.
Ralph Armstead and Robert K. Dwyer of Greater Orlando Area Legal Services, Inc., Orlando, for Appellee.

EN BANC
PETERSON, Chief Judge.
Meadow Groves Management, Inc., d/b/a The Groves, appeals a non-final order temporarily enjoining it from selling a mobile home owned by its former tenant and appellee, John McKnight. We affirm.
McKnight rented a space for his mobile home in The Groves' mobile home park. He failed to pay rent and The Groves obtained a final judgment for possession of the rental space on April 3, 1995. The Groves then obtained a writ of possession on April 13, 1995, commanding the sheriff to "remove all persons and property from the ... (mobile home lot)." The sheriff removed McKnight from the premises but his mobile home remained.
The Groves then proceeded to follow the statutory summary procedure of section 713.78, Florida Statutes (1993), by advertising to sell McKnight's mobile home for unpaid rent. McKnight then asked the circuit court to enjoin The Groves from conducting the sale because the mobile home was exempt as homestead property pursuant to section 222.05, Florida Statutes (1993). The trial court arrived at the correct result by granting the injunction but for an incorrect reason.
Section 713.78(2) entitles a person regularly engaged in the business of transporting vehicles by wrecker, tow truck, or car carrier, to a lien for towing and storage fees. The lien may be enforced by retention of possession and eventual public auction if the requirements of section 713.78 are met. The problem with The Groves' attempt to invoke the statute is that it is not regularly engaged in the business of transporting vehicles. Therefore, it does not qualify to use the summary procedure prescribed by section 713.78(5) to enforce its lien for rent.
McKnight's claim that his mobile home is exempt from sale because it is homestead property fails since the exemption was extinguished when the county court determined that The Groves was entitled to possession of its mobile home lot on April 3, 1995, due to McKnight's failure to fulfil his contractual obligation to pay rent in return for lawful possession of the lot. At that time *317 he was no longer in lawful possession of the mobile home lot occupied by his mobile home as required by section 222.05, Florida Statutes (1993):
Setting apart leasehold. Any person owning and occupying any dwelling house, including a mobile home used as a residence, or modular home, on land not his own which he may lawfully possess, by lease or otherwise, and claiming such house, mobile home, or modular home as his homestead, shall be entitled to the exemption of such house, mobile home, or modular home from levy and sale as aforesaid.
(Emphasis added.) We recognize that McKnight's counsel argued that McKnight was prevented from removing his mobile home from the rented space at some point in time not reflected in the record. However, the record does not reflect evidence of the prevention. Upon remand, the trial court may consider evidence of any attempt to defeat McKnight's homestead exemption by preventing him from removing his mobile home while he was in lawful possession of the rental space.
The order temporarily enjoining The Groves from conducting a sale pursuant to section 713.78, Florida Statutes (1993) is affirmed because the record does not reflect that The Groves qualifies as an entity entitled to use the sale procedure set forth in section 713.78(5). Because the trial court reserved jurisdiction over the claim for unpaid rent, we remand for further proceedings.
AFFIRMED.
DAUKSCH, COBB, GOSHORN, HARRIS, GRIFFIN and ANTOON, JJ., concur.
W. SHARP, J., concurs in part; dissents in part, with opinion.
THOMPSON, J., concurs in part, dissents in part, with opinion in which W. SHARP, J., concurs.
W. SHARP, Judge, concurring in part, and dissenting in part.
I agree with Judge Thompson's opinion. If the majority opinion's view of Florida's homestead exemption for mobile homes is correct, then as the song goes, one can truly ask, "Is that all there is?" Because it isn't very much. It is only as good as one's ability to pay one's rent. I cannot agree that the Legislature intended to create such an ephemeral right if it went to the trouble to create a homestead exemption for mobile homes in the first place. Surely more was intended. If not, then the most that can be said for it is that it is an effective tool for owners of mobile home parks to extract prompt rent payments from their renters/lessees.
Florida is heavily populated with mobile homes. They provide relatively inexpensive, quality shelter for Florida's large population of retirees, as well as families with children. A majority of mobile homes in this state are located in rental parks, where the mobile home renter rents space from the owner of that park. Thomas C. Marks and Alfred A. Colby, Some Proposed Changes to the Florida Constitution, 18 Nova L Rev 1519, 1544-45 (1994).[1] Thus, the impact of this decision is considerable.
In this case, the owner of a mobile home park rented a lot to McKnight. McKnight placed his mobile home on the lot. He lived there. But he defaulted on his rent. The owner evicted McKnight, and sought to seize the mobile home to satisfy the unpaid rent obligation. The majority opinion holds that the mobile home park owner cannot do this, solely because it resorted to the incorrect statutory procedure to do so.
But the message is clear. There is another better way to seize and levy on McKnight's mobile home. It is just a matter *318 of time until the lawyers figure out how to do it right. McKnight has no homestead exemption for his mobile home for his rent obligation, or for any other obligation owed to any other creditor for that matter, because he is no longer in "lawful possession" of his mobile home lot.
The Florida Constitution provides a homestead exemption from forced sale:
(a) There shall be exempt from forced sale under process of any court, and no judgment decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person....
(1) a homestead ...
Art. X, § 4(a), Fla. Const.
Chapter 222 implements Florida's constitutional protection against forced sale of homestead property to satisfy judgment creditors. Grant v. Credithrift of America, Inc., 402 So.2d 486 (Fla. 1st DCA 1981). In 1977, section 222.05 was amended to provide:

Any person owning and occupying any dwelling house, including a mobile home used as a residence, or modular home, on land not his own which he may lawfully possess, by lease or otherwise, and claiming such house, mobile home or modular home as his homestead, shall be entitled to the exemption of such house, mobile home or modular home from levy and sale as aforesaid. (emphasis added)
There is no exception in any of these provisions for rent obligations due to the owner of leased land on which a mobile home is parked. That is not to say that a mobile home could not be forcibly removed from a mobile home park upon default on a lot lease, but should the park owner be able to evict the mobile home owner and simultaneously seize and levy on the mobile home itself? I suggest that is contrary to the well established purpose of Florida's homestead exemption. In fact it appears to violate section 723.062, which appears to give an evicted mobile home owner at least ten days after issuance of a writ of possession to remove his homestead.[2]
Florida's homestead laws are intended to shelter the family and provide a "refuge from the stresses and strains of misfortune." Miami Country Day School v. Bakst, 641 So.2d 467, 470 (Fla. 3d DCA 1994), rev. denied, 651 So.2d 1195 (Fla.1995); Grant. Elimination of homestead instanter upon default in the lot lease or judgment of eviction appears contrary to this purpose. In In re Meola, 158 B.R. 881, 882 (S.D.Fla.1993), the court stated, "Clearly, the legislature's purpose in enacting the homestead exemption was to secure for the householder a home for himself and his familyregardless of his financial condition."
Pursuant to this policy, the homestead exemption should be liberally construed in favor of the party claiming its protection. Miami Country Day School; In re Mangano, 158 B.R. 532 (Bankr.S.D.Fla.1993); In re Meola. Accordingly, I would construe section *319 222.05's expanded homestead provision to include owners of mobile homes used as a residence on land not his own which he may initially lawfully possess by lease or otherwise. The word "may" is used in section 222.05 to express ability, competency, permission, possibility, probability or contingency. See Black's Law Dictionary 883 (5th ed. 1979). It does not mean in the command sense, that there must be a current and valid lease in existence to continue homestead protection for the mobile home.
Another way of saying this is that I do not think the Florida Legislature intended to make fee simple ownership of land a prerequisite for homestead exemption for mobile homes. Case law has extended the exemption for mobile homes to any right or interest a person may hold in land, whether legal or equitable in nature.[3] I would interpret section 222.05 as providing homestead exemption for mobile homes if the debtor lawfully had the right to place a mobile home on the realty or occupy it while using the mobile home as his homestead. This would eliminate homestead for trespassers or squatters, but not for renters in default on their leases.
The mobile home in this case acquired its homestead status before the judgment for back rent was obtained. No judgment can become a lien on homestead property if the property acquired its homestead status prior to the attachment of the judgment lien. Volpitta v. Fields, 369 So.2d 367 (Fla. 4th DCA), cert. denied, 379 So.2d 204 (Fla.1979). Thus, it should not be seized or subject to seizure or levy to satisfy that judgment until the homestead status is lost.
The homestead status should continue until the mobile home owner abandons it by failing to take possession of the mobile home after an eviction, and relocate it to another lawfully possessed piece of real estate pursuant to section 723.062. The date of judgment of eviction should not be the cut-off point for the mobile home's homestead status.
THOMPSON, Judge, concurring in part and dissenting in part.
I agree that section 713.78(2) is inapplicable. However, I do not agree that McKnight's mobile home lost its homestead status "due to McKnight's failure to fulfill his contractual obligation to pay rent in return for lawful possession of the lot." Instead, I would hold that the mobile home was exempt as homestead property pursuant to Article X, § 4(a), Florida Constitution, and section 222.05, Florida Statutes (1993), because McKnight's mobile home qualified as his homestead before the judgment for back rent was obtained.
It is well settled that the exemption provisions of Article X, section 4(a) "should be liberally construed in the interest of protecting the family home" or in this case McKnight's mobile home. Quigley v. Kennedy & Ely Ins., Inc., 207 So.2d 431, 432 (Fla.1968); accord, Vandiver v. Vincent, 139 So.2d 704, 707 (Fla. 2d DCA 1962). From the record it is clear that McKnight used the mobile home as his residence. Further, it is undisputed that McKnight formerly was in lawful possession of the lot on which his mobile home apparently still remains. It is also clear that mobile homes can qualify for the homestead exemption.
Section 222.05 has been interpreted as expanding homestead protection not only to mobile homes but to other dwellings used as a debtor's home. E.g., Miami Country Day School v. Bakst, 641 So.2d 467 (Fla. 3d DCA 1994) (holding that a debtor's houseboat with no motor was exempt as homestead property), rev. denied, 651 So.2d 1195 (Fla.1995); In re Meola, 158 B.R. 881 (Bankr.S.D.Fla. 1993) (holding that a debtor's trailer home qualified as exempt homestead property). Since the purpose of the homestead exemption is "to promote the stability and welfare of the state by securing to the householder a home ... beyond the reach of creditors", Miami Country Day School, 641 So.2d at 468-469 (quoting Public Health Trust of Dade County v. Lopez, 531 So.2d 946 (Fla. 1988)), I would affirm the trial court's ruling *320 that the mobile home qualified as homestead property.
W. SHARP, J., concurs.
NOTES
[1] In 1990, rental parks for mobile homes accounted for over 71 percent of the mobile homes in the state of Florida. Marks and Colby, 18 Nova L.Rev. at 1545, n. 135. It has been estimated that as many as 75 percent of all retirees coming to Florida move into mobile homes. Marks and Colby, 18 Nova L.Rev. at 1544, n. 134.
[2] That section provides:

723.062 Removal of mobile home owner; process.
(1) In an action for possession, after entry of judgment in favor of the mobile home park owner, the clerk shall issue a writ of possession to the sheriff, describing the lot or premises and commanding him to put the mobile home park owner in possession. The writ of possession shall not issue earlier than 10 days from the date judgment is granted.
(2) At the time the sheriff executes the writ of possession, the landlord or his agent may remove any personal property, including the mobile home, found on the premises to or near the property line or, in the case of the mobile home, into storage. If requested by the landlord, the sheriff shall stand by to keep the peace while the landlord removes personal property. When such a request is made, the sheriff may charge a reasonable hourly rate, and the person requesting the sheriff to stand by to keep the peace shall be responsible for paying the reasonable hourly rate set by the sheriff. Neither the sheriff nor the landlord nor his agent shall be responsible to the tenant or any other party for loss, destruction, or damage to the property after it has been removed.
[3] J. Allen Maines & Donna Litman Maines, Our Legal Chameleon Revisited: Florida's Homestead Exemption, 30 Univ. Fla.L.Rev. 227, 247-248 (1978). See also Donna Litmann Seiden, There is No Place Like Home(stead) in FloridaShould it Stay That Way? 18 Nova.L.Rev. 801, 804-808 (1994).