**In re William R. and Georgia L. KIRBY, Debtors.**

**Bankruptcy No. 98–00987–6B3.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

May 13, 1998.

█

---

Neil J. Buchalter, Titusville, Florida, Lisa Kuhlman Tietig, Merritt Island, Florida, for debtors.

Laurie Weatherford, Winter Park, Florida, for trustee.

Andrew R. Herron, Miami, Florida, for Dwight Barfield and Joe Carillo.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on an Emergency Motion to Dismiss or For Relief From Stay filed by Dwight Barfield and Joe

Carrillo ("Movants") (Doc. 5) and Debtors' Response to Creditors' Emergency Motion to Dismiss or For Relief From Stay and Motion For Turnover of Property to Debtor (Doc. 8). The Debtors requested in their motion a determination of whether their 1992 Monaco Motor coach was exempt homestead property. Appearing before the Court were Andrew R. Herron, attorney for Movants; Neil J. Buchalter, attorney for Debtors; Laurie Weatherford, Chapter 13 Standing Trustee; and Lisa Kuhlman Tietig, amicus curiae on behalf of the Debtors. After reviewing the pleadings, evidence, exhibits, and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

William R. Kirby ("Kirby") has a permanent physical disability and requires medical treatment at different hospitals throughout the United States. William R. and Georgia L. Kirby ("Debtors") sold their primary homestead residence located at 2915 Dairy Road, Titusville, Florida in 1994 and moved to reside with Georgia Kirby's sister, Ramona Gayle Briggs ("Briggs"), in Prineville, Oregon.

In 1995, Briggs and the Debtors purchased a 1992 Monaco Motorcoach ("motor coach") for $160,000.00. The motor coach is titled in the state of Oregon and reflects co-ownership with the Debtors and Briggs.[1] The motor coach is specifically designed to accommodate Kirby's physical impairment and is used as the Debtors' primary residence. The Debtors spend the majority of their time traveling outside the state of Florida for personal and medical purposes.

Dwight Barfield and Joe Carrillo ("Movants") are perfected judgment creditors in the Eleventh Circuit Court, Dade County, Florida ("state court action") against the Debtors for approximately $340,000.00.[2] The Movants obtained a writ of execution based upon their final judgment. The Brevard County Sheriff's Office executed a pre-petition levy and seized the Debtors' motor coach for purpose of satisfying the Movants' judgment liens on January 12, 1998. The state court scheduled a hearing on February 6, 1998, to determine the exempt status of the motor coach. The motor coach was in possession prior to the bankruptcy filing with the Brevard County Sheriff's Office.

The Debtors filed for relief under Chapter 13 of the Bankruptcy Code on February 6, 1998.[3] The Debtors claimed the motor coach as exempt homestead property, indicating the motor coach was jointly-owned with Briggs. The Movants filed an Emergency Motion to Dismiss or For Relief From Stay (Doc. 5) on February 12, 1998, objecting to the Debtors' claim of homestead exemption on the motor coach. The Movants sought relief from stay "for cause" pursuant to 11 U.S.C. § 362(d)(1) because the perfected liens on the motor coach were not being adequately protected. Alternatively, they moved for relief pursuant to 11 U.S.C. § 362(d)(2) contending the Debtors had no equity in the motor coach and it was not needed for an effective reorganization.

The Debtors filed their response to Movants' motion and filed a Motion for Turnover of Property of the Debtors on February 17, 1998 (Doc. 8). The Debtors requested a determination of whether the motor coach was exempt as homestead and an Order to turnover the Debtors' motor coach pursuant to 11 U.S.C. § 362.[4]

---

1. There is nothing in the record indicating what percentage of the motor coach is owned by the Debtors.

2. Dwight Barfield and his wife hold a final judgment dated April 25, 1995, from the state court action in the amount of $221,883.00, excluding post-judgment interest. Joe Carrillo holds a final judgment dated November 8, 1994, from the state court action in the amount of $69,000.00, excluding post-petition interest.

3. The Debtors have filed for relief under title 11 twice prior to this case. The Debtors filed for relief under Chapter 7 (Case No. 92–4925–6B7) on May 20, 1992. The Debtors received a discharge on December 8, 1992. The Debtors filed for relief under Chapter 13 (Case No. 97–1027–6B3) on February 7, 1997. The Debtors voluntarily dismissed their Chapter 13 case on June 28, 1997.

4. The Debtors mistakenly cite to 11 U.S.C. § 362. Section 542(a), however, governs the turnover of estate property.

The Debtors' Motion for Turnover of Property was granted on April 17, 1998 (Doc. 35). The Movants were provided adequate protection as a condition for turnover.[5]

■ The Debtors' motor coach does not qualify for homestead exemption pursuant to Florida law. The fact that the Debtors owned the motor coach and intended to use it as their primary residence is not sufficient to create a recognizable property interest protected from attachment by creditors in Florida. As prescribed by Florida law, there must be a demonstrated nexus to a fixed property interest in Florida, whether it involves ownership or possession of realty.

### CONCLUSIONS OF LAW

The principal issue is whether the Debtors' motor coach is homestead property pursuant to Article X, Section 4 of the Florida Constitution.

Article X, Section 4 of the Florida Constitution provides, in pertinent part:

There shall be exempt from forced sale ..., and no judgment, decree or execution shall be a lien thereon ... the following property owned by a natural person: (1) A homestead ... of contiguous land and improvements thereon ... upon which the exemption shall be limited to the residence of the owner or his family .... *Id.*

■ Florida homestead is based upon various public policy grounds. First, it protects individuals from utter destitution, which relieves the state's burden of supporting destitute families. *Hill v. First Nat'l Bank of Marianna*, 79 Fla. 391, 84 So. 190, 192 (1920). Secondly, it increases family stability by providing refuge from economic misfortunes. *Butterworth v. Caggiano*, 605 So.2d 56, 60 (Fla.1992). Thirdly, it encourages property ownership and individual financial independence. *Bigelow v. Dunphe*, 143 Fla. 603, 197 So. 328, 330 (1940).

The Debtors contend the homestead provision protects their motor coach from attachment by creditors because they intended it as their primary residence and the "actual use" of the property was the Debtors' primary residence. *See Cooke v. Uransky*, 412 So.2d 340 (Fla.1982)(finding that the actual characterization of homestead "depends upon the intention of the [person] to make the property his family's permanent residence.").

■ A debtor's homestead must have the element of physical permanency to a particular interest in Florida in addition to establishing an intention requirement. "We adhere to the rule that intent alone is not a sufficient basis for the establishment of a homestead. There must first be ... property which meets the constitutional requirements of a homestead." *Orange Brevard Plumbing & Heating Company v. La Croix*, 137 So.2d 201, 203 (Fla.1962).

The constitutional requirements of homestead require there be an attachment to a fixed and permanent property interest in Florida even for nontraditional mobile properties. *See In re Bubnak*, 176 B.R. 601, 602 (Bankr.M.D.Fla.1994) (finding a motor home satisfied the characteristic of permanency since it has "a permanent hookup for sewer, electric, cable, TV and telephone in the park that they reside."); *In re Mangano*, 158 B.R. 532, 534 (Bankr.S.D.Fla.1993)(finding a Sports Coach homestead since the debtors "pay rent to the park in which the Sports Coach sits, and that park provides it with electricity, water, and sanitary waste removal."); *Miami Country Day School v. Bakst*, 641 So.2d 467 (Fla. 3rd DCA 1994)(houseboat was eligible for homestead exemption after considering its stationary nature since "[t]he houseboat cannot be used as a vehicle: it has never been equipped with a motor and was towed to its present location."). Accordingly, the Debtors have to establish a sufficient nexus, one that has a degree of permanency, to a fixed property interest in Florida to gain homestead protection.

The characteristic of physical permanency is deeply rooted in the language of Florida's

---

**5.** Adequate protection shall consist of cash payments of $1219.00 per month, designation that the Movants are lienholders and loss payees on appropriate vehicle documents and payment of storage costs to the Brevard County Sheriff's Office for turnover of the motor coach. The Movants' Motion for Relief From Stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2) is due to be denied based upon adequate protection has been provided to them pursuant to 11 U.S.C. § 363(e).

constitutional homestead provision. Article X, Section 4 of the Florida Constitution of 1885 illustrates that the homestead exemption was originally designed to protect the family residence and the realty on which the dwelling was situated. Florida expanded the protection of homestead with section 222.05, Fla. Stat., to include mobile homes used as a residence on leasehold estates. This provision provides that "homestead" includes a dwelling house, including a mobile home or modular home used as a residence "on land not his or her own which he or she may lawfully possesses...." Section 222.05, Fla. Stat.

The Debtors and their amicus contend that section 222.05 shows the Florida legislature no longer intended homestead protection to be tied to real property. They further argue permanence of location was no longer the legislature's primary concern, but whatever a family had called its permanent home. Because of the expansive legislative intent under section 222.05, the Debtors contend their motor coach qualifies as homestead because it is the only structure where the Debtors live.

■ The rules of statutory construction dictate that "[w]hen the language of a statute is clear and unambiguous and conveys a clear and definite meaning, the statute must be given its plain and ordinary meaning." *In re McCollam*, 612 So.2d 572, 573 (Fla.1993); *Birnholz v. 44 Wall Street Fund, Inc.*, 880 F.2d 335, 341 (11th Cir.1989). Absent an ambiguity, the statute's plain meaning prevails. *See, e.g. Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of N. Am.*, 32 F.3d 528, 532 (11th Cir.1994).

■ The plain language of section 222.05 conflicts with the Debtors' interpretation of the statute. By using the words "on land not

his or her own which he or she may lawfully possesses" the Florida legislature intended to keep as a condition precedent to claiming homestead a connection to realty. Section 222.05 extended the protection of homestead exemption for mobile homes if the debtor has the lawful right of possession to a leasehold property interest. It did not abrogate the land connection requirement within the geographic confines of Florida.

The Debtors used the motor coach for a substantial part of the year to travel outside the state of Florida. The Debtors' interpretation of homestead laws would conceivably allow them travel outside of Florida for all but one day of the year and still be entitled to protection under Florida laws. Such a result is inconsistent with exemptions under Florida homestead law. *Minick v. Minick*, 111 Fla. 469, 149 So. 483, 488 (1933)(domicile in Florida "denotes a fixed, permanent residence, to which, when absent, one has the intention of returning."); *In re Dixson*, 153 B.R. 594 (Bankr.M.D.Fla.1993)(person must be domiciled in Florida for the greater part of 180 days immediately preceding the date of the filing of the petition to claim Florida exemptions).

The amicus curiae brief filed on behalf of the Debtors asserted two supplemental bases pursuant to Fed.R.Bankr.P. 7015(d)[6] as grounds to grant the Debtors their exemption. These contentions will be addressed even though they were not properly raised during an evidentiary hearing.

■ The amicus first contends the motor coach is exempt as a "professionally prescribed health aid" pursuant to Fla. Stat. section 222.25(2). The amicus submitted into evidence a prescription from a medical doctor that states, "motorhome: fully equipped with hoist, ceiling track, monitoring system, wheelchair access."[7]

---

6. "A supplemental pleading is an appropriate vehicle by which to set forth new facts in order to update the earlier pleading...." *Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir. 1992). Rule 15(d) provides: "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading **setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.**" Fed.R.Civ.P. 15(d)

(emphasis added). The amicus brief sets forth legal claims in existence at the time the original pleading was filed. Therefore, an amendment to the pleadings pursuant to Fed.R.Civ.P. 15(a) should have been the proper basis for asserting their additional legal claims.

7. Conspicuously missing from this document is the date the purported prescription was authorized.

There exists no authority for this proposition. The motor coach is not "uniquely suited and principally used for the diagnosis, cure, mitigation, treatment or prevention of disease or for the purpose of affecting any structure or function of the body" and does not qualify as a "health aid" entitled to exemption under Florida law. *See In re Driscoll,* 179 B.R. 664, 666 (Bankr.D.Or.1995)(disallowing as exempt an automobile even though it is "suited for use by the debtor given the limitations imposed by his injury.").

■ The amicus next contends Florida's homestead law violates the Debtors' fundamental right to travel because the Debtors used their motor coach to travel interstate.

There exists no authority for this proposition. Contrary to the amicus' contention, the constitutionally protected right to interstate travel does not encompass this situation. The cases on which the amicus relies upon generally concern situations in which a state discriminates against citizens from out-of-state from important governmental services, effectively discouraging immigration by those from out-of-state. *See, e.g., Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (durational residency requirements for free medical care excessively burden right to travel); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (durational residency requirements for welfare unjustifiably burden right to interstate travel). Florida's homestead laws do not place artificial durational residency requirements before a debtor can qualify for homestead's protections.

The Debtors' circumstances are unique. They live in their motor coach specifically adapted to care for Kirby's medical needs. Kirby's mobility is severely restricted without the motor coach since the Debtors use it for personal and medical reasons to travel across the country. It is not possible to ascertain whether Florida's legislative body took into account the difficult cases, such as this one, where because of a person's medical infirmity he or she is limited to a particular lifestyle and residence. This Court is bound to follow existing caselaw and the plain language of Florida's constitutional language and section 222.05 no matter how compelling the Debtors' situational needs may be for their use of the motor coach.

The Debtors' motor coach is not exempted from their bankruptcy estate pursuant to 11 U.S.C. § 522(b) since it does not meet the literal requirements under Florida's homestead laws.