**In the Matter of Leroy George YETTAW, Debtor.**

**No. 8:03–bk–09968–TEB.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 14, 2004.

LeRoy George Yettaw, New Port Richey, FL, Pro se.

Beth Ann Scharrer, Seminole, FL, trustee.

### ORDER ON CREDITOR, WALLACE CALNEY'S, OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION

THOMAS E. BAYNES, JR.,
Bankruptcy Judge.

THIS CAUSE came before the Court at a Final Evidentiary Hearing on February 10, 2004, upon the Objection to Claim of Exemption filed by Wallace Calney, a creditor in Debtor's case. The Court, having heard arguments of counsel, reviewed the evidence and the record, and being otherwise advised, finds as follows:

### *BACKGROUND*

The evidence at the Final Evidentiary Hearing established Debtor filed his Chapter 7 bankruptcy case in 2003. In the schedules, Debtor claims his 1988 Winnebago Chieftain motor home, valued at $18,000.00, to be exempt under the Florida Constitution as homestead. *See* Fla. Const. art. X, § 4; Fla. Stat. Ch. 222.01, et seq. Debtor acquired the motor home for $15,000.00 some few months before filing bankruptcy. Financially, he was unable to obtain employment due to extensive health problems. Debtor sold his homestead, took the proceeds and bought the motor home and parked it at a motor home park.

Debtor pays $300.00 a month rent which includes sewage, water and electricity. Debtor was denied Social Security disability, but appears to receive necessary medication on a charitable basis. He has a minimal part-time job and minimal expenses. The motor home itself is not capable of running, does not have a valid registration, and is used solely for the purposes of a residence—having not been moved since entering the RV park. According to Debtor's testimony and other

evidence, it is possible to rejuvenate mechanics of the motor home, (if Debtor were financially able), therefore, it must be concluded that the motor home is inoperable. Debtor asserts the vehicle is his residence, and it is his intent to reside there as it is very economical for him considering his dire financial position.

## DISCUSSION

The bankruptcy courts in the State of Florida, as well as the state courts, deal with the question of whether untraditional mobile abodes could be transferred into homestead, thereby benefiting from the homestead exemption created in the Florida Constitution, on a fairly regular basis. As may be gathered, the two most unique "residences" are motor homes and boats. In fact, the Florida Legislature enacted Fla. Stat. Ch. 222.05 which expanded the definition of "dwelling house" to exempt mobile and modular homes held by a debtor where the debtor merely leases the land. Clearly, Fla. Stat. Ch. 222.05 comes into play when determining whether non-traditional abodes other than mobile homes, such as motor homes and boats, may be a dwelling house entitled to the homestead exemption. *See Miami Country Day School v. Bakst,* 641 So.2d 467, 469–70 (Fla. 3rd Dist.Ct.App.1994).

While the characterization of homestead is grounded in the Florida Constitution and statutory law, it is also a product of state public policy. It is quite clear the Florida state courts, as well as the federal bankruptcy courts, have determined the issue of homestead should be liberally construed in favor of the individual claiming the exemption. *See In re Bubnak,* 176 B.R. 601, 602–03 (Bankr.M.D.Fla. 1994) (holding a motor home met the requirements for a homestead exemption); *In re Mangano,* 158 B.R. 532, 534–35 (Bankr.S.D.Fla.1993) (holding a motor

home met the requirements for a homestead exemption); *In re Meola,* 158 B.R. 881, 882–83 (Bankr.S.D.Fla.1993) (holding a travel trailer met the requirements for a homestead exemption); *In re Imprasert,* 86 B.R. 721, 722 (Bankr.M.D.Fla.1988) (holding temporary absence from home did not constitute abandonment of homestead); *Butterworth v. Caggiano,* 605 So.2d 56, 59–61 (Fla.1992) (holding property entitled to homestead exemption is not subject to civil or criminal forfeiture). As the Florida Supreme Court states in *Public Health Trust v. Lopez,* 531 So.2d 946, 948 (Fla. 1988),

> As a matter of public policy, the purpose of the homestead exemption is to promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors who have given credit under such law.

The burden of proof lies with the objecting party, the creditor here, to prove by a preponderance of the evidence that the Debtor is not entitled to the exemption claimed. *See In re McClain,* 281 B.R. 769, 773 (Bankr.M.D.Fla.2002); *In re Ehnle,* 124 B.R. 361, 363 (Bankr.M.D.Fla.1991).

Ultimately, however, the policy must be construed with criteria for homestead where there are "unconventional" or "nontraditional abodes." The Court, upon reviewing all the cases dealing with motor homes and analogous abodes such as motor boats, concludes the courts, both federal and state, look to the following criteria to determine whether or not the public policy of homestead exemption shall apply. The criteria include, but are not limited to:

1) The Debtor's intent to make the non-traditional abode his homestead. *See, e.g., In re Mead,* 255 B.R. 80, 84 (Bankr.

S.D.Fla.2000) (holding a boat met the requirements for homestead exemption).

2) Whether the debtor has no other residence. *See, e.g., Miami Country Day School v. Bakst,* 641 So.2d at 469.

3) Whether the evidence establishes a continuous habitation. *See, e.g., In re Brissont,* 250 B.R. 413, 414–15 (Bankr. M.D.Fla.2000) (holding a mobile boat did not meet the requirements for homestead exemption).

4) Whether the debtor maintains at least a possessory right associated with the land establishing a physical presence. *See, e.g., In re Dean,* 177 B.R. 727, 729 (Bankr.S.D.Fla.1995).[1]

5) Whether the nontraditional abode has been physically maintained to allow long-term habitation versus mobility. *See, e.g., In re McClain,* 281 B.R. at 773.

6) Whether the physical configuration of the abode permits habitation, otherwise the physical characteristics are immaterial. *See, e.g., In re Mangano,* 158 B.R. at 534 (holding use, rather than design or size, is the key factor in determining the homestead status of a nontraditional abode).

■ Reviewing the record in light of the relevant criteria, the Court finds the fact that Debtor sold his homestead and used all the proceeds to buy the motor home is sufficient to establish an intent to make the motor home the Debtor's homestead. The record establishes Debtor has no other residence. The evidence establishes habitation to be continual and consistent with homestead as the vehicle no longer has a license, is not in operating condition and Debtor does not have the ability to bring the mobile home back in service. The Debtor's lease upon the land, which

includes the services necessary to make the motor home habitable, establishes a possessory right sufficient to maintain a homestead.

Finally, the record reflects the motor home is maintained for long-term habitation, as evidenced by Debtor acquiring all the necessary requirements for habitation including, but not limited to, water, sewer, and electrical service. The motor home is physically configured to serve as Debtor's living quarters and the record clearly reflects this use of the motor home. The Court understands full well there is evidence that the lease is month-to-month and there is the ever present ability to unhook the particular services to the mobile home, but this does not outweigh the evidence establishing the criteria for homestead.

### CONCLUSION

As Chief Bankruptcy Judge Mark of the Southern District in *In re Mangano,* 158 B.R. at 535, states,

> Certain members of the public (and the media) believe that Florida's homestead exemption allows wealthy debtors to shelter a disproportionate amount of their wealth from creditors .... In this case, the Court is confronted with the opposite end of the spectrum—debtors with virtually no property other than the vehicle in which they live. Here, there is room for judicial discretion within the confines of the Bankruptcy Code, Florida Statutes and Florida Constitution.

Judge Mark's findings are consistent with this case. Federal and state law leads this Court to the conclusion that under the facts in this case, the 1988 Winnebago Chieftain motor home as maintained by the Debtor should be considered a dwelling house and allowed a homestead exemp-

---

**1.** The law does not require the debtor own the land, *see* Fla. Stat. Ch. 222.05, *In re Mead,*

255 B.R. at 83–84.

tion under the Florida Constitution and Florida Statutes. *See* Fla. Const. art. X, § 4; Fla. Stat. Ch. 222.05. Therefore, the Objection to Claim of Exemption filed by the Creditor, Wallace Calney, should be overruled.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Objection to Claim of Exemption filed by Creditor, Wallace Calney, is hereby overruled.