### In re Edward L. SCHUMACHER and Darline J. Schumacher, Debtors.

#### No. 6:08–bk–01029–ABB.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

July 3, 2008.

---

**6.** Plan of Reorganization, Article IV Execution and Implementation of the Plan, ¶ 1.

Richard W. Hennings, Richard W. Hennings PA, Tavares, FL, for Debtors.

## *ORDER*

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Objection to Debtors' Claim of Exemption (Doc. No. 18) ("Objection") filed by Gene T. Chambers, the Chapter 7 Trustee herein ("Trustee"), objecting to the homestead exemption claimed by Edward L. Schumacher and Darline J. Schumacher, the Debtors herein (collectively, "Debtors"). An evidentiary hearing was held on June 2, 2008 at which the Debtors, counsel for the Debtors, and the Trustee appeared. The parties were directed to submit post-hearing briefs. They submitted briefs containing further allegations of fact and statements of law (Doc. Nos.29, 30).

The Debtors filed this joint Chapter 7 case on February 15, 2008 listing as assets in Schedule A (Doc. No. 1):

(i) Motor home located at 117 Sandalwood Drive, Paisley, Lake County, Florida 32767 ("Lot"), which address is their address of record; and

(ii) real property located at 2993 Eastland Road, Mt. Dora, Florida.

The real property located in Mount Dora, Florida was the Debtors' former residence, which they surrendered to the mortgage holder. The motor home is a 1998 twenty-eight foot Bounder recreational vehicle ("Motor Home") valued at $20,000.00 with no encumbrances. The Debtors claim the Motor Home as fully exempt homestead property in Schedule C pursuant to Article X, Section 4(a) of the Florida Constitution and Fla. Stat. Sections 222.01, 222.02, and 222.05 (Doc. No. 1). The Trustee objects to the claim of exemption asserting the Motor Home is "personalty" and does not constitute homestead property.

Debtors filing for bankruptcy protection in Florida are entitled to the Florida state law exemptions due to Florida's opt-out of the federal exemption scheme pursuant to 11 U.S.C. Section 522(b) and Fla. Stat. Section 222.20. Article X, Section 4(a) of the Florida Constitution provides:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

(1) a homestead ... if located within a municipality, to the extent of one-half acre of contiguous land, upon

which the exemption shall be limited to the residence of the owner or the owner's family.

FLA. CONST. art. X, § 4(a).

Florida Stat. Section 222.05 provides:

Any person owning and occupying any dwelling house, including a mobile home used as a residence, or modular home, on land not his or her own which he or she may lawfully possess, by lease or otherwise, and claiming such house, mobile home, or modular home as his or her homestead, shall be entitled to the exemption of such house, mobile home, or modular home from levy and sale as aforesaid.

Fla. Stat. 222.05.

The Debtors purchased the Motor Home from Cross Country in November 2007. They, to finance the purchase, gave Cross Country a rifle, van, generator, travel trailer, and $1,500.00. The Debtors use the Motor Home as their sole and permanent residence. It contains all of the Debtors' personal possessions. They live in the Motor Home because they cannot afford conventional housing. They purchased the Motor Home with the intention it would be their home.

The Motor Home is situated on the Lot, which is located within a recreational vehicle park ("RV Park"). The RV Park accommodates mobile homes and recreational vehicles. The Debtors lease the Lot on a month-to-month basis pursuant to a written lease and paid rent, in advance, for a six-month period. The Debtors do not own an interest in the Lot, the RV Park, or in any real property. They receive their mail at a post office near the RV Park.

The Debtors drove the Motor Home once on December 3, 2007 to move it from the dealership to the Lot. They purchased vehicle tags for the Motor Home, valid for two years, solely for the purpose of moving the Motor Home to the Lot. They could not move the Motor Home without valid vehicle tags. They purchased two-year vehicle tags, instead of one-year tags, because the two-year tags were a better value.

The Motor Home has not been driven since December 3, 2007. The tires are in poor condition and not fit for driving, but the Motor Home is otherwise drivable. The Debtors do not intend to drive the Motor Home. They own no other vehicles and rely on friends and family for transportation.

The Motor Home is connected to utilities (water, sewer, and electricity) provided by the RV Park, which connections are not permanent. The Motor Home's backend is situated on hydraulic jacks placed on blocks. The Debtors intend to place the Motor Home on a permanent foundation, remove the wheels, and place a skirt around its base, but lack the financial resources to do so at this time.

The Trustee asserts the Motor Home is not entitled to homestead protection because it could be driven if the tires were replaced, is not permanently attached to the Lot, and the utility connections are not sufficiently permanent.

■ Motor homes, also commonly referred to as recreational vehicles, are not specifically identified in Article X, Section 4(a) of the Florida Constitution or Fla. Stat. Section 222.05 as homestead property. Motor homes are not "mobile homes," which are enumerated as dwelling houses in Fla. Stat. Section 222.05.

■ The Florida Courts have consistently and emphatically held the home-

stead exemption is to be construed liberally. It is "well settled" in the Florida State Courts the homestead exemption "should be liberally construed in the interest of protecting the family home." *Quigley v. Kennedy & Ely Ins., Inc.*, 207 So.2d 431, 432 (Fla.1968). "The purpose of the homestead is to shelter the family and provide it a refuge from the stresses and strains of misfortune." *Collins v. Collins*, 150 Fla. 374, 7 So.2d 443, 444 (1942).

■ A debtor's Florida homestead exemption claim is presumptively valid. *Colwell v. Royal Int'l Trading Corp. (In re Colwell)*, 196 F.3d 1225, 1226 (11th Cir. 1999); 11 U.S.C. § 522(*l*) ("[T]he property claimed as exempt on such list is exempt."). The party challenging a homestead exemption carries the burden "to make a strong showing" the debtor is not entitled to the claimed exemption. *In re Franzese*, 383 B.R. 197, 202–03 (Bankr. M.D.Fla.2008).

■ A "bankruptcy court must interpret and apply the Florida exemption law in the same manner as a Florida State Court." *Colwell*, 196 F.3d at 1226 (11th Cir.1999). The list of dwelling houses contained in Fla. Stat. Section 222.05 entitled to homestead protection is not exclusive. *Miami Country Day School v. Bakst*, 641 So.2d 467 (Fla. 3d DCA 1994) (holding claimant's houseboat, a "self-contained living environment[ ]" and used as her sole permanent residence, qualified as a dwelling house and was entitled to homestead exemption). The homestead exemption does not require the party claiming the exemption to own the land upon which the dwelling house is located. Fla. Stat. § 222.05.

■ The determination whether a nontraditional abode, such as a mobile home or a boat, constitutes a "dwelling house" entitled to homestead protection is a factually specific determination made on a case by case basis with the homestead claimant's intent being a paramount fact. The Bankruptcy Court in *In re Yettaw*, 316 B.R. 560 (Bankr.M.D.Fla.2004) employed a six-part factual analysis in determining whether the debtor's mobile home constituted a dwelling house entitled to homestead protection:

(i) The debtor's intent to make the nontraditional abode his homestead;

(ii) The Debtors' sole residence is the Mobile Home.

(iii) The Debtors have continuously inhabited the Mobile Home since December 3, 2007.

(iv) Whether the debtor maintains at least a possessory right associated with the land establishing a physical presence;

(v) Whether the nontraditional abode has been physically maintained to allow long-term habitation versus mobility; and

(vi) Whether the physical configuration of the abode permits habitation, otherwise the physical characteristics are immaterial.

*Id.* at 562–63. The Bankruptcy Court, understanding the lot lease was month-to-month and there was "the ever present ability to unhook the particular services to the mobile home," found the debtor met each of the criteria and the mobile home constituted a dwelling house entitled to homestead protection. *Id.* at 563.

■ The Debtors meet each of the Yettaw criteria:

(i) They intend to make the Mobile Home their homestead. Such intent

is established by: their statements; their turnover of the majority of their assets to purchase the Mobile Home; the Lot lease and their advance payment of rent; the Mobile Home's situs at the Lot and placement on blocks; all of their personal items are contained in the Mobile Home; and their continuous habitation in the Mobile Home since December 3, 2007.

(ii) The Debtors' sole residence is the Mobile Home.

(iii) The Debtors have continuously inhabited the Mobile Home since December 3, 2007.

(iv) The Debtors maintain a possessory right to the Lot establishing a physical presence through the lease.

(v) The Mobile Home has been physically maintained to allow long-term habitation versus mobility. The Mobile Home is no longer in operating condition. Its backend is placed on blocks and its tires are not roadworthy. It is connected to utilities and contains all of the Debtors' personal possessions.

(vi) The physical configuration of the Mobile Home permits habitation.

The Schumachers' Mobile Home is a "dwelling house" qualifying for a homestead exemption pursuant to Fla. Stat. Section 222.05 and Article X, Section 4(a) of the Florida Constitution. Their exemption claim is due to be allowed.

The Debtors' case is distinguishable from this Court's previous decisions finding motor homes did not constitute dwelling houses entitled to homestead protection. This Court held in *In re Kirby*, 223 B.R. 825 (Bankr.M.D.Fla.1998) the debtors' motor home did not qualify for home-

stead protection and constituted property of the estate on the grounds it was driven for a substantial portion of the year outside of Florida and lacked any demonstrated nexus with a parcel of realty. The Debtors' Motor Home, in contrast, was driven once and is situated permanently on the Lot.

The Court held *In re Andiorio*, 237 B.R. 851 (Bankr.M.D.Fla.1999) the debtors' motor home did not qualify for homestead exemption on the basis the debtors did not establish the motor home's physical permanency. The motor home had been driven to New Jersey, was maintained so it was drivable, and the debtors intended to use it for traveling. The Debtors in the present case have no intention of driving the Motor Home, have not maintained it in drivable condition, and only drove it once from the dealership to the Lot.

The Trustee has failed to establish the Motor Home is not a dwelling house entitled to homestead protection. The facts and circumstances establish the Motor Home is the Debtors' permanent residence and is a dwelling house pursuant to Fla. Stat. Section 222.05. The Motor Home is entitled to homestead exemption pursuant to Article X, Section 4(a) of the Florida Constitution and Fla. Stat. Sections 222.01, 222.02, and 222.05.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the Trustee's Objection (Doc. No. 18) to the Debtors' homestead exemption claim is hereby **OVERRULED;** and it is further

**ORDERED, ADJUDGED and DECREED** that the Debtors' homestead exemption claim is hereby **ALLOWED** and their interest in the Motor Home located at 117 Sandalwood Drive, Paisley, Lake

County, Florida 32767 is exempt as homestead pursuant to Article X, Section 4(a) of the Florida Constitution and Fla. Stat. Sections 222.01, 222.02, and 222.05.